UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JONATHAN BALDWIN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>NET 1 UEPS TECHNOLOGIES, INC., HERMAN G. KOTZE and ALEX M.R. SMITH,<br><br>Defendants. | Case No. 1:19-cv-11174<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jonathan Baldwin ("Plaintiff"), by his attorneys, except for his own acts, which are based on knowledge, alleges the following based upon the investigation of counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by Net 1 UEPS Technologies, Inc. ("UEPS" or the "Company"), as well as regulatory filings and reports, securities analyst reports and advisories by the Company, press releases and other public statements issued by the Company, and media reports about the Company. Plaintiff believes that additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery:

## NATURE OF THE ACTION

1.  This is a federa1 securities class action on behalf of all investors who purchased or otherwise acquired UEPS securities between September 12, 2018, and November 8, 2018, inclusive (the "Class Period"), seeking remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.  The federal law claims asserted herein arise under and pursuant to Sections 10(b)

and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 27 of the Securities Act (15 U.S.C. §78aa.). This Court has jurisdiction over each Defendant named herein because each Defendant is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

4. Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. § 1391(b) because certain of the acts alleged herein, including the preparation and dissemination of materially false and/or misleading information, occurred in this District.

## PARTIES

5. Plaintiff purchased UEPS securities within the Class Period and, as a result, was damaged thereby. Plaintiff's certification evidencing his transactions is attached hereto as Exhibit A.

6. Defendant UEPS is incorporated in Florida and maintains its principal offices at President Place, 4th Floor, Cnr. Jan Smuts Avenue and Bolton Road Rosebank, Johannesburg 2196, South Africa. UEPS' common stock trades on the NasdaqGS under the ticker symbol "UEPS."

7. Defendant Herman G. Kotze ("Kotze") was the Company's Chief Executive Officer ("CEO") at all relevant times.

8. Defendant Alex M.R. Smith ("Smith") was the Company's Chief Financial Officer ("CFO") at all relevant times.

9. Defendants in paragraphs 7-8 are collectively referred to herein as the "Individual Defendants."

10. Each of the Individual Defendants:

    (a) directly participated in the management of the Company;

    (b) was directly involved in the day-to-day operations of the Company at the highest levels;

    (c) was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

    (d) was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

    (e) was aware of or deliberately recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

    (f) approved or ratified these statements in violation of the federal securities laws.

11. Because of the Individual Defendants' positions within the Company, they had access to undisclosed information about UEPS' business, operations, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations and performance), conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.

12. As officers of a publicly held company whose securities were, and are, registered with the SEC pursuant to the federal securities laws of the United States, the Individual Defendants each had a duty to disseminate prompt, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded securities would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

13. The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of UEPS' reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market. Each Individual Defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

14. Each of the Individual Defendants are liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of UEPS securities by

disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding UEPS' business, operations, management and the intrinsic value of its securities and (ii) caused Plaintiff and other shareholders to purchase UEPS securities at artificially inflated prices.

## SUBSTANTIVE ALLEGATIONS

### A.    Company Background

15.    UEPS provides transaction processing services, financial inclusion products and services, and payment and cryptographic technology. The Company's principal platform is the Universal Electronic Payment System, a payment technology using decentralized and biometrically secure smart cards. In addition, UEPS offers telecommunication products such as prepaid airtime on behalf of all network operators in South Africa and own 55% of DNI-4PL Contracts Proprietary Limited ("DNI"), the largest distributor of starter packs for the third-largest network, Cell C (Pty) Limited ("Cell C"). Through DNI, UEPS provides financing to Cell C to assist in the roll-out of its telecommunications network infrastructure.

### B.    Material Misstatements and Omissions during the Class Period

16.    The Class Period begins on September 12, 2018, when the Company filed a Form 10-K for the fiscal year ended June 30, 2018 ("2018 10-K") with the SEC, which provided the Company's fiscal year 2018 financial results and positions and stated that the Company's internal control over financial reporting was effective as of June 30, 2018. The 2018 10-K was signed and certified under the Sarbanes Oxley Act of 2002 by the Individual Defendants attesting to the accuracy of the financial statements, effectiveness of internal controls, and that all fraud was disclosed.

17. The statements in paragraphs ¶16 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company lacked effective internal control over financial reporting; (2) the Company had misclassified its investment in Cell C Proprietary Limited; (3) the Company's financial statements for the fiscal year 2018 were overstating its income; and (4) as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times.

C.     **The Truth Begins to Emerge**

18. On November 8, 2018, after the market close, UEPS filed a Form 8-K with the SEC under item 4.02(a) for non-reliance on previously issued financial statements ("November 2018 Form 8-K"). Therein, UEPS stated in relevant part:

> **Item 4.02. Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review**.
>
> The Net 1 UEPS Technologies, Inc. (the "Company") Audit Committee of the Board of Directors (the "Audit Committee") concluded on November 8, 2018, after careful consideration of the relevant facts and circumstances and following consultation with the Company's management and Deloitte & Touche (South Africa), the Company's independent registered public accounting firm, that the Company's consolidated financial statements for the year ended June 30, 2018, included in the Company's Annual Report on Form 10-K for the year ended June 30, 2018, should be restated, and that such consolidated financial statements and Deloitte & Touche (South Africa)'s audit report thereon should no longer be relied upon, due to the Company's re-evaluation of the classification of its investment in Cell C Proprietary Limited ("Cell C"). The Company will also make appropriate revisions to the selected financial data for the year ended June 30, 2018 and the quarterly information for fiscal 2018 to reflect these changes.
>
> Although the Company elected the fair value option on acquisition of its investment in Cell C, an unlisted company, this investment was incorrectly presented as available-for-sale and the change in its fair value of $25.2 million, net of taxation

of $7.3 million, was incorrectly recorded in other comprehensive income for the year ended June 30, 2018. The investment in Cell C should have been accounted for at fair value with changes in fair value recorded in the statement of operations. The Company's restated consolidated financial statements will reflect the changes in fair value of the investment in Cell C in the consolidated statement of operations.

The restatement of the Company's consolidated financial statements does not result in any change in the carrying value of the Cell C investment or the net asset value of the Company. The impact of the restatement on the Company's consolidated balance sheet for the year ended June 30, 2018, is presented in the table below:

|  | Year ended June 30, 2018 | | |
|---|---|---|---|
|  | Reported | Correction | Restated |
|  |  | (in thousands) |  |
| Accumulated other comprehensive loss | $ (159,237) | $ (25,199) | $ (184,436) |
| Retained earnings | 812,426 | 25,199 | 837,625 |
| Total equity | $ 738,430 | $ - | $ 738,430 |

The impact of the restatement on the Company's consolidated statement of operations for the year ended June 30, 2018, is presented in the table below:

|  | Year ended June 30, 2018 | | |
|---|---|---|---|
|  | Reported | Correction | Restated |
|  | (in thousands, except per share data) | | |
| Change in fair value of equity securities | $ - | $ 32,473 | $ 32,473 |
| Net income before tax | 67,893 | 32,473 | 100,366 |
| Income tax expense | 41,353 | 7,274 | 48,627 |
| Net income after tax | 26,540 | 25,199 | 51,739 |
| Net income attributable to Net1 | $ 39,150 | $ 25,199 | $ 64,349 |
| **Net income per share, in United States dollars:** |  |  |  |
| Basic earnings attributable to Net1 shareholders | 0.69 | 0.44 | 1.13 |
| Diluted earnings attributable to Net1 shareholders . | 0.69 | 0.44 | 1.13 |

The impact of the restatement on the Company's consolidated statement of comprehensive income for the year ended June 30, 2018, is presented in the table below:

|  | Year ended June 30, 2018 | | |
|---|---|---|---|
|  | Reported | Correction | Restated |
|  | (in thousands) | | |
| Net income | $ 38,270 | $ 25,199 | $ 63,469 |
| Total other comprehensive income (loss) | 3,234 | (25,199) | (21,965) |
| Comprehensive income | $ 41,504 | $ - | $ 41,504 |

The impact of the restatement on the Company's consolidated statement of changes in equity for the year ended June 30, 2018, is presented in the table below:

|  | Retained earnings | Accumulated other comprehensive loss |
|---|---|---|
|  | (in thousands) | |
| As reported – June 30, 2018 | $ 812,426 | $ (159,237) |
| Correction of misstatement | 25,199 | (25,199) |
| As restated – June 30, 2018 | $ 837,625 | $ (184,436) |

The impact of the restatement on the Company's consolidated statement of cash flows for the year ended June 30, 2018, is presented in the table below:

|  | Year ended June 30, 2018 | | |
|---|---|---|---|
|  | Reported | Correction | Restated |
|  | (in thousands) | | |
| Net income | $ 38,270 | $ 25,199 | $ 63,469 |
| Fair value adjustment | 212 | (32,473) | (32,685) |
| Increase (Decrease) in deferred taxes | (1,308) | 7,274 | 5,966 |
| Net cash provided by operating activities | $ 132,605 | $ - | $ 132,605 |

The Company is in the process of preparing restated financial statements for the year ended June 30, 2018, which the Company anticipates filing with the SEC on Form 10-K/A for the year ended June 30, 2018, as soon as practicable. The Company does not intend to file amendments to any of its previously filed Quarterly Reports on Form 10-Q.

19. On this news, the price of the Company's common stock declined $2.16 from a close on November 8, 2018 at $7.00 per share of UEPS common stock, to a close on November 9, 2018 at $4.84 per share of UEPS common stock, *a drop of approximately 30.86 percent.*

20. On December 6, 2018, UEPS filed an amendment to the 2018 10-K on Form 10-K/A with the SEC, disclosing a material weakness in its internal control over financial reporting ("2018 10-K/A"). Therein, UEPS stated in relevant part:

> We identified a material weakness in our internal control over financial reporting where the control over the review of the accounting for non-routine complex transactions was not appropriately designed. The material weakness resulted in the misapplication of GAAP on the recognition of revenue from our SASSA contract extension, specifically, the complexity around the contract extension by the court order, which is considered non-routine, resulted in recognition of revenue at an incorrect rate. In November 2018, the material weakness resulted in the restatement of our consolidated financial statements as of and for the year ended June 30, 2018, due to the misapplication of GAAP on the accounting treatment for the investment in Cell C Proprietary Limited, which is currently being restated.

## ADDITIONAL SCIENTER ALLEGATIONS

21. As alleged herein, Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding UEPS, their control over, and/or receipt and/or modification of UEPS' allegedly materially misleading statements and/or their associations with the Company which made them privy to confidential proprietary information concerning UEPS, participated in the fraudulent scheme alleged herein.

## LOSS CAUSATION AND ECONOMIC LOSS

22. During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the Company's stock price, and operated as a fraud or deceit on acquirers of the Company's securities. As detailed above, when the truth about UEPS' misconduct and its lack of operational and financial controls was revealed, the value of the Company's common stock declined precipitously as the prior artificial inflation no longer propped up its stock price. The decline in UEPS' common stock price was a direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market. The timing and magnitude of the common stock price decline negates any inference that the loss suffered by Plaintiff and other members of the Class was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to the Defendants' fraudulent conduct. The economic loss, i.e., damages, suffered by Plaintiff and other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the Company's stock price and the subsequent significant decline in the value of the Company's share, price when Defendants' prior misrepresentations and other fraudulent conduct was revealed.

23. At all relevant times, Defendants' materially false and misleading statements or omissions alleged herein directly or proximately caused the damages suffered by the Plaintiff and other Class members. Those statements were materially false and misleading through their failure to disclose a true and accurate picture of UEPS' business, operations, and financial condition, as alleged herein. Throughout the Class Period, Defendants publicly issued materially false and misleading statements and omitted material facts necessary to make Defendants' statements not false or misleading, causing UEPS' securities to be artificially inflated. Plaintiff and other Class

members purchased UEPS' securities at those artificially inflated prices, causing them to suffer the damages complained of herein.

## PRESUMPTION OF RELIANCE; FRAUD-ON-THE-MARKET

24. At all relevant times, the market for UEPS securities was an efficient market for the following reasons, among others:

(a) UEPS common stock met the requirements for listing, and was listed and actively traded on the NasdaqGS, a highly efficient market;

(b) During the Class Period, UEPS common stock was actively traded, demonstrating a strong presumption of an efficient market;

(c) As a regulated issuer, UEPS filed with the SEC periodic public reports during the Class Period;

(d) UEPS regularly communicated with public investors via established market communication mechanisms;

(e) UEPS was followed by securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of brokerage firms during the Class Period. Each of these reports was publicly available and entered the public marketplace; and

(f) Unexpected material news about UEPS was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

25. As a result of the foregoing, the market for UEPS securities promptly digested current information regarding UEPS from all publicly available sources and reflected such information in UEPS' stock price. Under these circumstances, all purchasers of UEPS securities during the Class Period suffered similar injury through their purchase of UEPS' securities at

artificially inflated prices and a presumption of reliance applies.

26. Alternatively, reliance need not be proven in this action because the action involves omissions and deficient disclosures. Positive proof of reliance is not a prerequisite to recovery pursuant to the ruling of the United States Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security. Here, the facts withheld are material because an investor would have considered the Company's financials and adequacy of internal controls over financial reporting when deciding whether to purchase and/or sell stock in UEPS.

## NO SAFE HARBOR; INAPPLICABILITY OF BESPEAKS CAUTION DOCTRINE

27. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the material misrepresentations and omissions alleged in this Complaint.

28. To the extent certain of the statements alleged to be misleading or inaccurate may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

29. Defendants are also liable for any false or misleading "forward-looking statements" pleaded because, at the time each "forward-looking statement" was made, the speaker knew the "forward-looking statement" was false or misleading, and the "forward-looking statement" was authorized and/or approved by an executive officer of UEPS who knew that the "forward-looking statement" was false. Alternatively, none of the historic or present-tense statements made by the

defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by the defendants expressly related to or stated to be dependent on those historic or present-tense statements when made.

## CLASS ACTION ALLEGATIONS

30. Plaintiff brings this action on behalf of all individuals and entities who purchased or otherwise acquired UEPS securities on the public market during the Class Period, and were damaged, excluding the Company, the defendants and each of their immediate family members, legal representatives, heirs, successors or assigns, and any entity in which any of the defendants have or had a controlling interest (the "Class").

31. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, UEPS securities were actively traded on the NasdaqGS. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by UEPS or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions. As of September 6, 2018, UEPS had more than 56,369,737 shares of common stock outstanding. Upon information and belief, these shares are held by thousands, if not millions of individuals located geographically throughout the country and possibly the world. Joinder would be highly impracticable.

32. Plaintiff's claims are typical of the claims of the members of the Class as all

members of the Class are similarly affected by the defendants' respective wrongful conduct in violation of the federal laws complained of herein.

33. Plaintiff has and will continue to fairly and adequately protect the interests of the members of the Class and his retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

34. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by the defendants' respective acts as alleged herein;

(b) whether the defendants acted knowingly or with deliberate recklessness in issuing false and misleading financial statements;

(c) whether the price of UEPS securities during the Class Period was artificially inflated because of the defendants' conduct complained of herein; and

(d) whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

35. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## COUNT I
### *Violation of Section 10(b) and Rule 10b-5 Against All Defendants*

36. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

37. During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase UEPS securities at artificially inflated prices. In furtherance of this unlawful scheme, plan, and course of conduct, each of the Defendants took the actions set forth herein.

38. Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for UEPS securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

39. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of UEPS as specified herein.

40. These Defendants employed devices, schemes, and artifices to defraud while in possession of material adverse non-public information, and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of UEPS' value and performance and

continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about UEPS and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of UEPS securities during the Class Period.

41.     Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) Individual Defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (2) each Individual Defendant, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's financial condition; (3) each Individual Defendant enjoyed significant personal contact and familiarity with the other Individual Defendant and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (4) each Individual Defendant was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

42.     Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were knowingly or recklessly and for the purpose and effect of concealing UEPS' operating condition and future business prospects

from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and misstatements of the Company's financial condition throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

43. As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of UEPS' securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of UEPS' publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired UEPS' securities during the Class Period at artificially high prices and were or will be damaged thereby.

44. At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding UEPS' financial results, which was not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their UEPS securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices that they paid.

45.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

46.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

47.     This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

## COUNT II
### *The Individual Defendants Violated Section 20(a) of the Exchange Act*

48.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

49.     The Individual Defendants acted as controlling persons of UEPS within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, agency, ownership and contractual rights, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends, are false and misleading. The Individual Defendants provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

50.  In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

51.  As set forth above, UEPS, the Individual Defendants each violated Section 10(b), and Rule 10b-5 promulgated thereunder, by their acts and omissions as alleged in this Complaint.

52.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

53.  This action was filed within two years of discovery of the fraud and within five years of each Plaintiff's purchases of securities giving rise to the cause of action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment as follows:

(a)  Determining that this action is a proper class action, certifying Plaintiff as class representative under Federal Rule of Civil Procedure 23 and Plaintiff's counsel as class counsel;

(b)  Awarding compensatory damages in favor of Plaintiff and the other members of the Class against all Defendants, jointly and severally, for all damages sustained as a result of the defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)  Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

(d) Granting extraordinary equitable and/or injunctive relief as permitted by law; and

(e) Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a jury trial.

Dated: December 5, 2019

Respectfully Submitted,

**LEVI & KORSINSKY, LLP**

*/s/ Eduard Korsinsky*
Eduard Korsinsky
Nicholas L. Porritt
Adam M. Apton
55 Broadway, 10th Floor
New York, NY 10006
Tel: (212) 363-7500
Fax: (212) 363-7171
Email: ek@zlk.com
Email: nporritt@zlk.com
Email: aapton@zlk.com

*Counsel for Plaintiff and Proposed Lead Counsel for the Class*